FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION                    99 OCT 20 AM 10: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

RANDY NICHOLS,                    )

    PLAINTIFF,                    )

VS.                    )          CV98-H-2256-S

CITY OF HAMILTON,                    )

    DEFENDANT.                    )

ENTERED

OCT 2 0 1999

## MEMORANDUM OF DECISION

The Court has before it the July 30, 1999 motion of defendant City of Hamilton for summary judgment. Pursuant to the Court's August 2, 1999 order, the motion was deemed submitted, without oral argument, on August 30, 1999.

## I. Procedural History

Plaintiff Randy Nichols, who has applied to work as a police officer for defendant, commenced this action on September 3, 1998 by filing a complaint in this Court alleging that defendant has hired as police officers applicants who are younger and less qualified than plaintiff. (See Compl. ¶¶ 5-11.) Plaintiff contends that defendant's alleged conduct constitutes a violation of the Age Discrimination in Employment Act ("ADEA"). (See Compl. ¶ 13.) Defendant's July 30, 1999 motion for summary

judgment asserts that defendant did not discriminate against plaintiff; that plaintiff has failed to establish a prima facie case for plaintiff's claim of age discrimination; that defendant can articulate legitimate, non-discriminatory reasons for its decision not to hire plaintiff; and that defendant would have reached the same decision without considering plaintiff's age. (See Def.'s Mot. Summ. J. ¶ 2.)

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment. Defendant filed a brief and submitted evidence[1] in support of its motion for summary judgment on July 30, 1999. On August 30, 1999 plaintiff responded by filing a brief and evidentiary submissions[2] in opposition to the motion. Defendant then filed a reply brief and additional

---

[1] Defendant submitted excerpts and exhibits from the March 3, 1999 deposition of Randy Nichols; excerpts and exhibits from the June 23, 1999 deposition of Kenneth Mays; excerpts from the March 4, 1999 deposition of Neal Childers; the July 28, 1999 affidavit of Kenneth Mays; the July 21, 1999 affidavit of Wade Williams; the July 28, 1999 affidavit of Sue Page; and the July 28, 1999 affidavit of Kenneth Lolley.

[2] Plaintiff submitted excerpts and exhibits from the March 3, 1999 deposition of Randy Nichols; excerpts and exhibits from the June 23, 1999 deposition of Kenneth Mays; and the June 22, 1999 declaration of Ed Howell.

2

supporting evidence[3] on September 3, 1999.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477

---

[3] Defendant submitted additional excerpts from the March 3, 1999 deposition of Randy Nichols.

3

U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at

4

trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a

directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Defendant City of Hamilton is a municipal corporation of the State of Alabama and operates under the mayor-council form of government. (See Dep. of Kenneth Mays 9.) The mayor and the five members of the city council jointly act as the appointing authority for defendant; at any time, a member of the appointing authority may move to hire a particular person for a position. (See Dep. of Kenneth Mays 10-11; Aff. of Kenneth Mays ¶ 3.) Employees are actually hired by a majority vote of the mayor and the city council. (See Dep. of Kenneth Mays 34-36; Aff. of Kenneth Mays ¶ 3.)

Plaintiff first applied for a position as a police officer with defendant in 1981 and thereafter applied for every opening known to plaintiff. (See Dep. of Randy Nichols 62-63.) For approximately the next 16 years, no apparent action was taken regarding plaintiff's periodic applications. Plaintiff never inquired into the status of his applications, although at least

6

once, plaintiff was informed that an open position had been filled with another, more qualified candidate. (See Dep. of Randy Nichols 69-70.) On that occasion, plaintiff accepted the reason given for the defendant's decision not to hire plaintiff as a police officer and did not pursue the matter. (See Dep. of Randy Nichols 70.) Also, in 1995 or 1996, plaintiff telephoned a member of the police department to ask why plaintiff had not been interviewed. (See Dep. of Randy Nichols 66, 71-72. ) However, during the approximately 16 year period from 1981 to April of 1997, plaintiff made no formal complaints about the defendant's hiring practices. (See Dep. of Randy Nichols 62-69.)

In 1997, plaintiff first complained officially about the defendant's lack of action on plaintiff's employment applications. Plaintiff attended a city council meeting on April 7, 1997 and inquired why plaintiff had never received an interview for any police officer openings. (See Dep. of Randy Nichols 75; Def.'s Ex. 3 to Dep. of Randy Nichols; Aff. of Kenneth Mays ¶ 4.) Following plaintiff's complaint to the council, Mayor Kenneth Mays instructed the police chief, Kenneth Lolley, to schedule plaintiff for an interview. (See Aff. of Kenneth Mays ¶ 4.) On April 10, 1997, plaintiff attained the age of 40. (See Dep. of Randy Nichols 9-10, 80.)

7

Plaintiff subsequently was scheduled for an interview with the mayor and members of the city council.  The interview was set for May 22, 1997.  (See Compl. ¶ 6; Dep. of Randy Nichols 97; Aff. of Kenneth Mays ¶ 5.)  On the Thursday before the interview, plaintiff encountered Chief Lolley at an area ballpark and had a heated exchange.  (See Aff. of Kenneth Lolley ¶ 4; Dep. of Randy Nichols 97-99.)  At the interview, plaintiff was asked about the encounter and admitted to the heated exchange with the police chief.  (See Dep. of Randy Nichols 89.)  During the interview with the mayor and council members, plaintiff was angry and remarked that the interview was merely a waste of time and a "joke."  (See Dep. of Randy Nichols 89-90; Dep. of Kenneth Mays 153-56; Dep. of Neal Childers 58-59; Aff. of Kenneth Mays ¶ 5; Aff. of Wade Williams ¶ 3.)  During the interview, Mayor Mays believed that plaintiff might become violent, and Mays and two city council members present concluded that plaintiff was no longer a viable candidate for the position of police officer. (See Dep. of Neal Childers 58-60; Aff. of Kenneth Mays ¶ 5; Aff. of Wade Williams ¶ 3.)  Plaintiff was not offered a position with defendant; rather on May 23, 1997, another, admittedly more qualified, candidate was hired.  (See Dep. of Randy Nichols 118; Pl's Ex. 3 to Dep. of Kenneth Mays.)

8

During the July 7, 1997 meeting of the city council, an announcement was made that defendant had received a grant from the United States Justice Department.  (See Decl. of Ed Howell ¶ 5; Pl.'s Ex. 38 to Dep. of Kenneth Mays.)  Mayor Mays indicated that the grant would be used to fund law enforcement.  (See Decl. of Ed Howell ¶ 5.)  The Journal Record newspaper quoted the mayor as saying that defendant wanted to recruit "at least two young people" to become police officers.  (See Pl.'s Ex. 38 to Dep. of Kenneth Mays; Dep. of Kenneth Mays 149-50; Aff. of Kenneth Mays ¶ 6.)  Soon after announcing the grant, defendant hired additional police officers.  (See Pl.'s Ex. 3 to Dep. of Kenneth Mays; Pl.'s Ex. 29 to Dep. of Kenneth Mays.)

Plaintiff now complains about younger officers hired following his unsuccessful interview.  Plaintiff specifically contends that all of the candidates hired under the Justice Department grant as well as all of the candidates interviewed were substantially younger than plaintiff and that all of the candidates actually hired were less qualified than plaintiff.  (See Pl.'s Br. at 2-3.)  On August 12, 1997 and November 6, 1997, plaintiff filed charges of age discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC").  The EEOC granted plaintiff a right to sue letter on June 29, 1998,

and plaintiff then timely filed the present action.

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint charges that defendant failed to hire plaintiff as a police officer because of plaintiff's age in violation of the ADEA. The ADEA provides, in part, that "[i]t shall be unlawful for an employer--(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a)(1) (1994). However, the ADEA's prohibition against age discrimination is "limited to individuals who are at least 40 years of age." Id. at § 631(a). Plaintiff was within the protected class at all relevant times and, therefore, entitled to the ADEA's protection.

In interpreting the provisions of the ADEA, courts of this circuit have, when applicable, adapted general principles developed under Title VII to analogous situations under the ADEA. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 19993). Before turning to plaintiff's specific claims, the Court first addresses those general principles applicable to disparate treatment claims, such as plaintiff's. The court begins by discussing the plaintiff's and the defendant's burdens

of proof and production.

A plaintiff may attempt to establish a case of age discrimination through the use of direct evidence, circumstantial evidence, or statistics. See Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). The Eleventh Circuit has adopted a variant of the framework announced by the Supreme court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for ADEA disparate treatment cases involving circumstantial evidence. See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). First, the plaintiff must demonstrate a prima facie case of age discrimination. Once plaintiff has satisfied the elements of the prima facie case, a presumption of discrimination arises. Defendant, though, may rebut the presumption by articulating legitimate, non-discriminatory reasons for the employment decision and the presumption of discrimination vanishes. If defendant articulates legitimate reasons for its actions, then plaintiff may attempt to show that the proffered, legitimate

11

reasons are merely pretext for discrimination.  See <u>Tidwell v.</u> <u>Carter Prods.</u>, 135 F.3d 1422, 1426 (11th Cir. 1998).  Although the burden of production shifts between plaintiff and defendant under the <u>McDonnell Douglas</u> framework, plaintiff retains at all times the ultimate burden of persuasion.  See <u>Texas Dep't of</u> <u>Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

However, the burden-shifting analysis of <u>McDonnell Douglas</u> is not appropriate when plaintiff offers direct evidence of discrimination, <u>EEOC v. Beverage Canners, Inc.</u>, 897 F.2d 1067, 1071 (11th Cir. 1990), because the presumption of discrimination raised under <u>McDonell Douglas</u> is simply not needed.  See <u>Thompkins v. Morris Brown College</u>, 752 F.2d 558 (11th Cir. 1985). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." <u>Burns v. Gadsden State Community College</u>, 908 F.2d 1512 (11th Cir. 1990).  <u>Cf.</u> <u>Wright v. Southland Corp.</u>, 1999 WL 688051, at *5-*6 (11th Cir.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding prior case law consistent with that definition).  Direct evidence does not include "stray remarks in the workplace" or "statements by

12

nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989). See also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (quoting Price Waterhouse). Once the plaintiff has presented some direct evidence of discrimination which the trier of fact accepts, the burden is on the defendant to prove by a preponderance of the evidence that the same decision would have been reached even in the absence of the improper consideration of plaintiff's age. See Burns, 908 F.2d at 1518; Alton Packaging, 901 F.2d at 923. See also Price Waterhouse, 490 U.S. at 258 (plurality opinion) (holding that "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's age into account").

The present case concerns both direct and circumstantial evidence of age discrimination. Plaintiff first argues that he has direct evidence of discrimination on the basis of age in defendant's hiring of police officers. (See Pl.'s Br. 5-8.) In the alternative, plaintiff also argues that he has at least circumstantial evidence of discrimination, which defendant has not rebutted with legitimate, non-discriminatory reasons that are

13

more than pretext for illegal disdrimination. (See Pl.'s Br. 8-14.)   The Court considers plaintiff's arguments in turn.

## 1.  Direct Evidence of Age Discrimination

Plaintiff offers as direct evidence of age discrimination the remarks of Mayor Kenneth Mays reported in the Journal Record newspaper and contained in the June 22, 1999 declaration of Ed Howell along with defendant's subsequent interviewing and hiring practices.  (See Pl.'s Br. 7-8.)  During the announcement of a Justice Department grant at the July 7, 1999 meeting of the Hamilton city council, Mayor Mays allegedly stated that defendant wished "to actively recruit at least two young people from our area interested in pursuing a law enforcement background."  (See Decl. of Ed Howell ¶ 5; Pl.'s Ex. 38 to Dep. of Kenneth Mays.) Although Mayor Mays does not recall making the statement attributed to him by Mr. Howell and the Journal Record and denies any intent to discriminate (See Aff. of Kenneth Mays ¶ 6.), the Court accepts as true for the purposes of this motion the assertion that Mayor Mays did indicate a desire to recruit "young people" as police officers.  The Court now considers whether the remarks of Mayor Mays coupled with the defendant's subsequent interviewing and hiring of candidates younger than plaintiff constitute direct evidence of discrimination.

14

As discussed previously, direct evidence allows proof of a fact without inference. See Burns v. Gadsden State Community College, 908 F.2d 1512, 1518 (11th Cir. 1990); Carter v. City of Miami, 870 U.S. 578, 581-82 (11th Cir. 1989). In employment discrimination cases, "direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation" about which the employee is complaining. Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990), dicta modified in part on other grounds, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). Decision makers' explicit statements about the plaintiff or derogatory remarks about members of plaintiff's class generally have been held to be direct evidence of discriminatory intent. See, e.g., Caban-Wheeler, 904 F.2d at 1555 (statement that "program needed a black director"); Haynes v. W.C. Cave & Co., Inc., 52 F.3d 928, 930-31 (11th Cir. 1995) (statements about "a sweet little old lady" not being able to perform the job); Burns, 908 F.2d at 1518 & n.9 (statement that women would not be hired for certain positions); EEOC v. Alton Packaging Corp., 901 F.2d 920, 923-24 (11th Cir. 1990) (statement that employer would not hire blacks and derogatory comment directed at black employee); Lindsey v. American Cast Iron Pipe

15

Co., 772 F.2d 799, 802 (11th Cir. 1985) (statement that employer

wished to fill position with someone younger); Buckley v.

Hospital Corp. of Am., Inc., 758 F.2d 1525, 1530 (11th Cir. 1985)

(comments about plaintiff's age and employer's need for "new

blood").

Not every ill-advised or unenlightened statement about age,

though, constitutes direct evidence of discrimination--even when

uttered by a decision maker. See Carter v. City of Miami, 870

F.2d 578, 582 (11th Cir. 1989); Young v. General Foods Corp., 840

F.2d 825, 829 (11th Cir. 1988). As Justice O'Connor wrote in her

Price Waterhouse concurrence, "stray remarks in the workplace,"

"statements by nondecisionmakers," and "statements by

decisionmakers unrelated to the decisional process itself" are

not direct evidence of discrimination. Price Waterhouse v.

Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989).

"[C]ourts have found only the most blatant remarks, whose intent

could be nothing other than to discriminate on the basis of age,

to constitute direct evidence of discrimination." Carter, 870

F.2d at 582 (footnote omitted). See also Young, 840 F.2d at 829

(statements that employee moved slowly and was the same age as

manager's father not direct evidence).

Here, the court is not convinced that the isolated comment

16

by Mayor Mays that defendant wished to recruit "at least two young people" is so blatant as to be <u>direct</u> evidence of discrimination. <u>See</u> <u>Carter</u>, 870 F.2d at 582. First, Mayor Mays made the comment two months after plaintiff's interview, at which time he had already concluded that plaintiff was not suitable for a position as a police officer because of plaintiff's behavior during the interview. (<u>See</u> Aff. of Kenneth Mays ¶ 5.) The statement, therefore, is unrelated to the decision-making process. <u>See</u> <u>Price Waterhouse</u>, 490 U.S. at 277 (O'Connor, J., concurring); <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330-31 (11th Cir. 1998) (statements made at time remote from employment decision not direct evidence). Second, the comment is not directed specifically at plaintiff or plaintiff's age. <u>See</u> <u>Carter</u>, 870 F.2d at 580, 582 (remark that employer did not want "little old Jewish ladies" running the office not directed at plaintiff and not direct evidence). Although the comment refers to a nebulous age group, when read in context, the statement is not one susceptible of a solely discriminatory intent. <u>See</u> <u>id.</u> at 582 (stating that only comments not susceptible to non-discriminatory intent constitute direct evidence). The remark that defendant wished "to actively recruit at least two young people from our area interested in pursuing a law enforcement

17

background" does not <u>directly</u> state that defendant will even hire "young" applicants--much less that defendant will not recruit or hire applicants over age 40; plaintiff simply draws an inference based upon his perceptions of Mayor Mays's meaning of the word "young" and the fact that plaintiff was not hired. See <u>Young</u>, 840 F.2d at 829 (plaintiff had to infer discriminatory intent from statement that plaintiff was same age as manager's father). Even if the remark is taken to mean that defendant will consider only "young" applicants, no evidence <u>directly</u> suggests that plaintiff would be excluded from Mayor Mays's definition of "young." In fact, plaintiff considers himself to be young and is younger than Mays. (<u>See</u> Dep. of Randy Nichols 137; Aff. of Kenneth Mays ¶ 1.) Given the timing and vagueness of the statement about recruiting "young people," it is, at best, a mere stray remark and, at worst, circumstantial evidence.

Similarly, the interviewing and hiring of candidates younger than plaintiff is no more than circumstantial evidence. Defendant's subsequent interviewing and hiring of police officers younger than plaintiff, in and of itself, does not show discrimination. Again plaintiff has made an attenuated inference based upon defendant's failure to hire plaintiff and Mayor Mays's remarks about recruiting "young people." <u>Cf.</u> <u>Young</u>, 840 F.2d at

18

829. By definition, such evidence is circumstantial rather than direct. See Early v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990).

Even assuming that Mayor Mays's comment constitutes direct evidence of discrimination, plaintiff could not prevail under Price Waterhouse because defendant has demonstrated that it would have made the same decision had plaintiff's age not been a factor. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989). The Price Waterhouse Court held:

> [W]hen a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.

Id. Here, defendant cites plaintiff's heated encounter with Chief Lolley and his hostile, insulting interview with the mayor and city council to show that, even if plaintiff's age were a factor in its hiring decisions, that defendant still would have made the same decision absent a consideration of age. Defendant argues that plaintiff's future employment opportunities with defendant's police department were not affected by his age but, rather, were determined by plaintiff's behavior at the May 22, 1999 interview because plaintiff could not thereafter achieve the

19

majority vote of the mayor and city council required to be hired

given the resulting sentiments of the mayor and at least two of

the five council members.  (See Def.'s Br. 5, 12.)  It is

axiomatic that one who, admittedly, exchanges heated words with a

potential supervisor and who, then, insults and frightens the

members of the appointing body will not be successful in gaining

employment.  The Court finds that no rational trier of fact could

conclude other than that defendant has proved beyond a

preponderance of the evidence that it would have made the same

decision not to hire plaintiff even if age were not a factor in

making the employment decision.

Although plaintiff asserts that the 1991 Civil Rights Act

legislatively modified Price Waterhouse so that a defendant in an

ADEA disparate treatment case may not escape all liability by

proving that the same decision would have been made absent an

improper consideration of the plaintiff's age (See Pl.'s Br.

14.), plaintiff is in error as to the breadth of the effects of

the 1991 legislation.  That portion of the 1991 Civil Rights Act

now codified at 42 U.S.C. § 2000e-5(g)(2)(B) does provide that a

court may grant certain limited relief even if the employer shows

that it would have taken the same action regardless of its

consideration of an improper factor, but the provision is limited

to "a claim in which an individual proves a violation under section 2000e-2(m) of this title . . . ." 42 U.S.C. § 2000e-5(g)(2)(B) (1994). Section 2000e-2(m), in turn, provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (1994). On the face of the law, the ADEA is not affected; only application of Price Waterhouse to Title VII claims is modified.

The Eleventh Circuit has not directly decided the applicability of the 1991 Civil Rights Act's modification of the Price Waterhouse mixed-motives defense to ADEA cases, and the courts that have decided the question are divided. See Lewis v. Young Men's Christian Ass'n, 53 F. Supp. 2d 1253, 1261-62 (N.D. Ala. 1999) (citing numerous cases). Some courts hold, based upon the plain language of the legislation, that the 1991 Civil Rights Act changes only Title VII and not the ADEA, but other courts assume, based upon the well-established practice of applying analogous Title VII concepts to ADEA cases, that the 1991 legislation also applies to the ADEA. See id. The Court finds the former view to be more persuasive. Had Congress intended the

21

modified mixed-motive liability rule of the 1991 legislation to apply to ADEA claims as well as to Title VII claims, it could have done so expressly but did not; the familiar interpretive maxim expressio unius est exclusio alterius[4] is applicable. Furthermore, the Eleventh Circuit has declined to extend the legislative modification of Price Waterhouse made in the 1991 Civil Rights Act to other, non-Title VII claims. See Mabra v. United Food & Commercial Workers Local Union No. 1996, 176 F.3d 1357, 1357-58 (11th Cir. 1999) (42 U.S.C. § 1981 claims); Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1084 n.5 (11th Cir. 1996) (42 U.S.C. § 1983 claims). See also Lewis, 53 F. Supp. 2d at 1262-63 (finding the 1991 Civil Rights Act inapplicable and applying Price Waterhouse to an ADEA retaliation case). Because Price Waterhouse still applies, in full, to claims under the ADEA and because defendant has demonstrated that it would have made the same decision without considering plaintiff's age, plaintiff cannot prevail even assuming that plaintiff has direct evidence of age discrimination.

In summary, plaintiff has not presented any direct evidence

---

[4] The inclusion of one thing is the exclusion of another. See, e.g., Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992) (applying the maxim in the context of preemption).

of age discrimination, and even if plaintiff had presented such evidence, he would still not prevail because defendant has demonstrated that it would have made the same decision absent a consideration of plaintiff's age. Lack of direct evidence, however, does not necessarily mean that plaintiff loses, because in the absence of direct evidence of discrimination, plaintiff may proceed through the use of circumstantial evidence. See Combs v. Plantation Patterns 106 F.3d 1519, 1527 (11th Cir. 1997). The Court now analyzes plaintiff's claim under the framework established for circumstantial evidence of employment discrimination.

## 2. Circumstantial Evidence of Age Discrimination

Although plaintiff's proffered evidence does not constitute direct evidence of age discrimination, plaintiff argues in the alternative that he has presented at least circumstantial evidence of employment discrimination. (See Pl.'s Br. 8-12.) In this circuit, ADEA disparate treatment cases involving circumstantial evidence are analyzed under a variant of the three-pronged, burden-shifting framework devised by the Supreme court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII claims. See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). Under the McDonnell Douglas scheme, a

plaintiff must first establish a prima facie case of discrimination.  See Tidwell v. Carter Prods.,135 F.3d 1422, 1426 (11th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 802.)  To establish a prima facie case of age discrimination through circumstantial evidence, a plaintiff must show (1) that he was over age forty; (2) that he was affected by an adverse employment action, such as a failure to hire; (3) that he was qualified for the position sought; and (4) that the position was filled by a substantially younger worker.  See O'Connor v. Consolidated Coin Carterers Corp., 517 U.S. 308, 310-313 (1996); Wright v. Southland Corp., 1999 WL 688051, at *2 & n.4 (1999) (discussing requirements for a prima facie case); Jameson, 75 F.3d at 1531. Here, plaintiff was over forty at the time of his interview; he was not hired by defendant; and reading the evidence and all inferences therefrom in the light most favorable to plaintiff, he was minimally qualified for the position of police officer. Defendant later interviewed and hired several other candidates, all of whom were substantially younger than plaintiff.  The Court finds that plaintiff has met the light burden required to demonstrate a prima facie case of employment discrimination.

The burden now shifts to defendant to articulate legitimate, non-discriminatory reasons for its employment decision.  See

Tidwell, 135 F.3d at 1426. Defendant may do so by producing admissible evidence sufficient to permit a rational trier of fact to find that the hiring process was not influenced by any discriminatory motive. See id. Here, defendant offers as evidence of a legitimate and non-discriminatory motive for its hiring decisions the heated exchange between plaintiff and the police chief on the eve of plaintiff's interview and plaintiff's agitated, insulting behavior during the interview. (See Def.'s Br. at 10-11.) The Court finds that defendant's evidence would allow a rational trier of fact to conclude that discriminatory animus did not motivate defendant's decision not to hire plaintiff as a police officer.

Defendant having articulated legitimate reasons for its hiring decision, the burden of production again shifts to plaintiff to show that defendant's proffered reasons are merely pretext for impermissible discrimination. See Tidwell, 135 F.3d at 1426. To avoid summary judgment, the plaintiff must offer "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997). As evidence of pretext, plaintiff offers the alleged pre-selection of Teena

25

Fields for a position filled the day after plaintiff's interview, a position regarding which plaintiff does not assert a claim. (See Pl.'s Br. at 13.) The deposition testimony cited by plaintiff in support of his allegation of pre-selection, however, does not actually demonstrate that defendant had pre-selected Fields or anyone else for a position; the referenced testimony simply relates general hiring practices. Furthermore, the Court cannot find how a decision concerning a position about which plaintiff does not complain relates to the defendant's later hiring decisions about which plaintiff does complain. See Young v. General Foods Corp., 840 F.2d 825, 830-31 (11th Cir. 1988) (plaintiff attempting to show pretext failed to demonstrate nexus between alleged inaccuracy in defendant's evidence supporting legitimate reasons for employment action and any discrimination). Plaintiff's allegations concerning the hiring of Fields are offered not so much as evidence of pretext but as justification for his own behavior; even if plaintiff felt his anger justified, defendant could still properly conclude, as it did, that plaintiff's personality, as shown through his behavior in the presence of the police chief and the mayor and city council, was not suitable for the position of police officer.

Although plaintiff does not do so explicitly, the remarks of

26

Mayor Mays concerning defendant's desire to recruit "young

people" to become police officers and the defendant's subsequent

interviewing and hiring of several officers in their twenties may

also be offered as evidence of pretext. At first, Mays's

statement coupled with the defendant's later actions may appear

as strong evidence of pretext, but a closer examination reveals a

lack of causal connection between the decision not to hire

plaintiff and the defendant's later actions. Mayor Mays and two

members of the city council testified that they determined that

plaintiff was an unsuitable candidate during the May 22, 1997

interview (See Dep. of Neal Childers 58-60; Aff. of Kenneth Mays

¶ 5; Aff. of Wade Williams ¶ 3.), and plaintiff has not

sufficiently controverted their testimony such as to present a

genuine issue of material fact. Mayor Mays made the remark

concerning recruiting "young people" two months later; at the

time of the remark and at the time of the later hires, plaintiff

had already been eliminated as a candidate for a post as a police

officer. Cf. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318,

1330-31 (11th Cir. 1998) (statements revealing earlier hiring

practices not evidence of discrimination at later time). No

other evidence even suggests any discriminatory intent at the

time of the actual adverse decision in May, and plaintiff may not

27

rely upon his own conclusory allegations of discrimination.  See
Young, 840 F.2d at 830.  In a case such as this, "[w]here the
defendant's justification evidence completely overwhelms any
inference to be drawn from the evidence submitted by the
plaintiff, the district court may properly acknowledge that fact
and award summary judgment to the employer."  Grigsby v. Reynolds
Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

     In summary, although plaintiff established a prima facie
case of age discrimination through the use of circumstantial
evidence, defendant rebutted plaintiff's prima facie case by
articulating legitimate, non-discriminatory reasons for its
hiring decision, which reasons plaintiff has failed to show as
pretext for discrimination.  The Court concludes that no material
issues of fact remain and that defendant City Of Hamilton is
entitled to judgment as a matter of law as to plaintiff's claim
of age discrimination in violation of the ADEA.  A separate order
will be entered.

     DONE this 20th day of October, 1999.


                              _____
                              SENIOR UNITED STATES DISTRICT JUDGE


                              28